BENJAMIN F. EVANS *v.* E. M. CASSADY, JR., *Receiver, etc.*

(No. 7564)

Submitted September 9, 1933. Decided October 3, 1933.
(Rehearing denied December 12, 1933)

*Richard Earle Davis, Donley & Hatfield,* and *Wm. S. John,* for plaintiff in error.

*Deveny & Furbee,* for defendant in error.

KENNA, JUDGE:

To a judgment for the plaintiff below, defendant, E. M. Cassady, Jr., receiver of The Second National Bank of Morgantown, prosecutes this writ of error.

Benjamin F. Evans brought this action in assumpsit in the circuit court of Marion County, West Virginia, against E. M. Cassady, Jr., receiver of The Second National Bank of Morgantown, West Virginia, in an effort to recover the amount of the interest coupons which became due and payable upon a certain liberty bond in the principal sum of $5,000.00, from and including April, 1928, to and including April, 1931, the aggregate of said coupons being $743.75. The first count in a declaration containing two special counts alleges that under an agreement dated the 27th day of April, 1927, between Benjamin F. Evans and Evans Coal Mining Company, and Rosedale Coal Company and The Second National Bank of Morgantown, pending the settlement of a certain controversy between B. F. Evans, and the Evans Coal Mining Company of the one part and Rosedale Coal Company of the other part, Evans agreed to deposit a $5,000.00 U. S. Fourth Liberty Bond to be held in escrow by The Second National Bank of Morgantown, West Virginia; that the agreement further provides that the interest coupons of said bond, pending the settlement of the controversy, should be by the

bank clipped and delivered to Evans; that the said agreement further stipulated that Evans Coal Mining Company and the said Benjamin F. Evans were to institute and prosecute within six months from the date of the agreement, a suit to determine the rights of the parties in the bond itself. The count alleges performance of the agreement on the part of Evans Coal Mining Company and Benjamin F. Evans in relation to the bringing of the suit, and failure of the bank to perform its part of the agreement with reference to clipping and delivering the coupons of the bond to Evans, in spite of its promise to do so. The count then goes on to allege that through the receivership the defendant Cassady has succeeded to the rights and obligations of the bank, that demand has been made upon him which he has refused to meet, and seeks recovery. The count alleges that the action is brought in Marion County because the judge of the circuit court of Monongalia County is disqualified. The second count simply seeks recovery on the basis of the agreement without alleging in detail the compliance by the plaintiff and the non-compliance by the defendant bank.

The agreement upon which this declaration is based is as follows:

"Whereas, in accordance with the provisions of a certain lease bearing date the 27th day of October, 1925, between Rosedale Coal Company, a corporation, of the one part, and B. F. Evans and H. H. Staggers, of the other part, there was on or about the 28th day of October, 1925, deposited in escrow in The Second National Bank of Morgantown, W. Va., one '$5,000.00 U. S. Fourth Liberty Bond No. B00082382' to be held by said Bank in accordance with the provisions of said lease; and

"Whereas, a controversy has arisen between the said B. F. Evans and Evans Coal Mining Company, of the one part, and said Rosedale Coal Company, of the other part, as to who is now entitled to said bond.

"Now, therefore, it is hereby agreed by and between the said Evans Coal Mining Company and B. F. Evans, of the one part, and said Rosedale Coal Company, of the other part, that the said bond shall remain in the possession of said Bank and be held by it until such time as it shall be judicially determined by a court of competent jurisdiction, who is entitled

to the right and possession of said bond; provided said Evans and said Evans Coal Mining Company institute and prosecute suit for such purpose within six months; and it is further agreed that until such time coupons attached to said bond shall, as they severally mature, be clipped by said Bank and delivered to the said B. F. Evans. And in evidence of the consent and agreement of said Bank to hold said bond as above provided, the said Bank has caused its name to be signed hereto by Chas. G. Baker, its attorney.

"Witness the following signatures this 27th day of April, 1927."

To this declaration, the defendant craved oyer of the agreement, dated April 27, 1927, and of the lease described in that agreement and thereupon demurred to the declaration and to each count thereof, assigning six several grounds of demurrer. The demurrer was overruled and, since the assignment of error based upon this ruling of the trial chancellor in this respect is not briefed and since an inspection of the demurrer discloses no ground upon which we believe the judgment should be set aside on this assignment, we deem a detailed discussion of the six separate grounds of demurrer unnecessary.

After the demurrer to the declaration was overruled, the defendant filed six special pleas thereto; and to these six special pleas, the plaintiff demurred in writing, pointing out in detail the reasons for regarding them as insufficient matter of defense. With the issues thus made up, the matters of law and of fact were by agreement submitted to the court in lieu of a jury upon a written stipulation which provides that in addition to papers which appear of record in this cause, the court in deciding it "may consider pleadings, exhibits, orders and other papers on file in the following cases heretofore pending in the circuit court of Monongalia County:" (1) action of trespass on the case by Benjamin F. Evans and others v. Rosedale Coal Company; (2) an action in detinue by B. F. Evans and others v. Rosedale Coal Company and The Second National Bank; (3) an appealed case from a justice of the peace styled Benjamin F. Evans v. The Second National Bank;

(4) a suit in chancery styled Evans Coal Mining Company and B. F. Evans v. Rosedale Coal Company and The Second National Bank. There is nothing to show us to what extent the trial court examined the papers in these various cases. Certain of them are set out in the record and are apparently to be considered as having been before the trial court. Consequently, it is impossible to determine just what was before the trial court in the way of proof that might have thrown light upon the correct interpretation of the agreement of April 27, 1927. Under the broad terms of the stipulation, the trial court in deciding the case could easily have gone much beyond those parts of the various cases that are set up in this record. How much further he did see fit to go in examining the proceedings in these cases, we have no means to judge.

The question raised on both sides and the one upon which a determination of the controversy seems to hinge is whether a detinue suit brought by Evans at the end of but within the six-months period constituted a compliance on his part with the terms of the agreement of April 27, 1927, so as, under that agreement, to place the duty upon the bank to clip and deliver to him the coupons on the liberty bond in question. There is no controversy in this case as to the title to the bond itself. That controversy has been decided elsewhere.

We are of opinion that Evans, by bringing the detinue action within the six-months period, substantially complied with what was contemplated to be done on his part by the agreement of April 27, 1927. The term "institute and prosecute", as applied to the suit to be brought, we think, cannot be deemed to mean that such suit must reach its final determination within a six-months period. The agreement fixes the time within which the suit is to be brought. It further fixes the time (when "it shall be judicially determined by a court of competent jurisdiction") up to which the coupons are to be turned over to Evans. If six months was intended to be the final limit of the time during which Evans was to receive the coupons (which are payable semi-annually), it seems totally inconsistent that there should be a still further stipulation under which he was to receive them until another event occurred. Having fulfilled his part of the agreement

by bringing the suit, the right to the coupons remained in him during its pendency, because to say that the right to the coupons, fixed by agreement, could be retroactively altered by determining, at a later date, the right to the bond itself would be in direct conflict with the very terms of the agreement of April 27, 1927.

We do not see how Evans could lose the right to the coupons even though he had failed to comply with the terms of the agreement of April 27, 1927, on his part. That agreement establishes an escrow for certain purposes "provided said Evans and said Evans Coal Mining Company institute and prosecute suit for such purpose within six months". Upon Evans' failure to institute and prosecute the suit contemplated, all that would occur would be a termination of the escrow and of the rights of Evans to have the coupons clipped and delivered to him under the terms of the escrow agreement itself. With this right terminated under the escrow agreement, Evans, it would seem, still had the same right to the coupons under the terms of the lease dated the 27th of October, 1925. In other words, had the escrow agreement been vacated by virtue of Evans' non-performance, still, under the terms of that agreement, no property right in the bond or in the coupons would be determined. On the other hand, in the event of Evans' performing the condition imposed upon him by the escrow agreement, his right to have the coupons delivered to him by virtue of its terms until such time as the rights in the bond were decided seems to us to be comparatively clear. The very words of the escrow agreement providing that the coupons shall be delivered to Evans "as they severally mature" make this construction of that agreement inevitable because the coupons were due one each six months. Therefore, treating them in the plural, as they severally mature, demonstrates that it was contemplated by the escrow agreement that more than one coupon would mature during the time that Evans was to have them. If the agreement was intended to be in operation only for a period of six months, then it is perfectly clear that Evans would be entitled to only one coupon. There would be no several maturities.

For the foregoing reasons, we are of opinion that this record discloses no error prejudicial to the plaintiff in error, and, consequently, that the judgment of the trial court must be affirmed.

*Affirmed.*